**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JOHN SHELL,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HEALTHTRAX FITNESS & WELLNESS, INC.,**<br><br>Defendant. | Case No. ____________________<br><br>Judge: ____________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Shell ("Plaintiff"), individually and on behalf of all similarly situated persons (the "Class" or "Class Members" (as further defined below)), alleges the following against Defendant Healthtrax Fitness & Wellness, Inc. (hereinafter referred to as "Defendant"), based upon personal knowledge and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of publicly available information as to all other matters:

## I. INTRODUCTION

1. Plaintiff brings this class action lawsuit, upon information and belief, against Defendant for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") from criminal hackers, resulting in a devastating data breach.[1]

---

[1] *See* Breachsense, *Healthtrax Fitness and Wellness Data Breach* (May 19, 2026), https://www.breachsense.com/breaches/healthtrax-fitness-and-wellness-data-breach/ (last visited June 3, 2026); DeXpose, *Akira Ransomware Strikes Healthtrax Fitness & Wellness* (May 18,

2. Defendant is a multi-state operator of health clubs and wellness centers headquartered in Glastonbury, Connecticut, with locations across the Northeast and Mid-Atlantic regions, including Connecticut, Rhode Island, Massachusetts, New York, and North Carolina. In the course of providing fitness, aquatics, personal training, wellness, and healthcare-focused services to its members, Healthtrax collects, stores, and maintains sensitive personal, financial, and health-related information entrusted to it by consumers.[2]

3. Several online sources have recently reported Defendant experienced a data breach in or around May 2026, perpetrated by Akira ransomware group (the "Data Breach" or "Breach"), as pictured below:[3]

2026), https://www.dexpose.io/akira-ransomware-strikes-healthtrax-fitness-wellness/ (last visited June 3, 2026); Ransomware.live, *Victim: Healthtrax Fitness & Wellness* (May 21, 2026), https://www.ransomware.live/id/SGVhbHRodHJheCBGaXRuZXNzICYgV2VsbG5lc3NAYWtpcmE (last visited June 3, 2026); CyberNewsLive (@CyberNewsLive), *Victim: Healthtrax Fitness & Wellness – Akira* (Aug. 21, 2026), X, https://x.com/cybernewslive/status/2060422984750305344 (last visited June 3, 2026).

[2] Healthtrax Fitness & Wellness, *Who We Are*, https://www.healthtrax.com/about-us/who-we-are (last visited June 3, 2026)

[3] HookPhish, *Ransomware Group Akira Hits: Healthtrax Fitness & Wellness* (May 29, 2026), https://www.hookphish.com/blog/ransomware-group-akira-hits-healthtrax-fitness-andwellness/ (last visited June 3, 2026).

**Incident Report**

| Attribute | Information |
|---|---|
| Target Organization | Healthtrax Fitness &Wellness |
| Threat Group | akira |
| Summary | Healthtrax, founded in 1979 and headquartered Glastonbury, CT, offers facilities and programs that integrate fitness, wellness education, traditional medical services and rehabilitation. H ealthtrax forms partnerships with leading health care systems to create a welcoming, centraliz ed place for members of the community to achieve their personal fitness and health goals. Here is the access to 10gb of corporate data. Employee and clients personal information (name, Dl and passport numbers, SSNs), contracts and agreements, personal records, financials, NDA a nd other confidential docs.<br>Click the download button.<br>You will find several password-free archives. Click on any of them to start the download. |
| Date of Breach | 2026-05-29T11:50:24.752127+00:00 |
| Discovery Date | 2026-05-29T11:50:26.453450+00:00 |
| Region | None |
| Target Domain | None |
| Business Sector | Consumer Services |

4. In the dark web post, Akira ransomware group reportedly claimed "We will upload 10gb of corporate data soon. Employee and clients personal information (name, Dl and passport numbers, SSNs), contracts and agreements, personal records, financials, NDA and other confidential docs."[4]

5. Based on Akira's post, and upon information and belief, through the Data Breach, Akira stole highly confidential employee and/or customer information, including names, addresses, email addresses, dates of birth, Social Security numbers, payroll information, driver's licenses, passports, and/or financial information (*i.e.*, account numbers, PIN numbers, and routing

[4] DeXpose, *Akira Ransomware Strikes Healthtrax Fitness & Wellness* (May 18, 2026), https://www.dexpose.io/akira-ransomware-strikes-healthtrax-fitness-wellness/ (last visited June 3, 2026).

numbers) (collectively, "Private Information"), which Defendant collected in the ordinary course of business.

6. To date, Defendant has failed to announce that it has experienced a data breach. Thus, most, if not all Class Members have no idea that their Private Information has been compromised, and that they are and continue to be at a significant risk of identity theft and various other forms of personal, social, and financial harm. This risk of harm will remain for their respective lifetimes.

7. Upon information and belief, the Private Information compromised in the Data Breach contained highly sensitive data, representing a gold mine for data thieves.

8. Armed with the Private Information accessed and/or acquired in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain financial or medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

9. Upon information and belief, there has been no assurance offered by Defendant that any personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

10. Plaintiff and Class Members have likely suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit

of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

11. Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

12. Upon information and belief, the potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

13. Upon information and belief, Defendant has failed to properly monitor and implement security practices regarding the computer network and systems that housed the Private Information.

14. Upon information and belief, had Defendant properly monitored its networks, it would have discovered the Breach sooner or possibly prevented it altogether.

15. Upon information and belief, Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of misuse.

16. Upon information and belief, Plaintiff's and Class Members' identities are now and forever will be at risk because of Defendant's negligent conduct, as the Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

## II. PARTIES

17. Plaintiff **John Shell** is, and at all times mentioned herein was, an individual citizen of Connecticut.

18. Defendant is a domestic business corporation with its principal address located at 622 Hebron Ave Suite 200A, Glastonbury, Connecticut 06033.

## III. JURISDICTION AND VENUE

19. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is believed to be more than 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20. The Court has general personal jurisdiction over Defendant because Defendant's principal place of business is located in this District.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because it is the District within which Defendant maintains its principal place of business.

## IV. FACTUAL ALLEGATIONS

### A. DEFENDANT'S BUSINESS AND COLLECTION OF PLAINTIFF'S AND CLASS MEMBERS' PRIVATE INFORMATION.

22. Defendant is a regional health, fitness, and wellness company headquartered in Glastonbury, Connecticut that owns and operates a network of fitness centers throughout Connecticut, Rhode Island, Massachusetts, New York, North Carolina, and New Jersey.[5]

[5] Healthtrax Fitness & Wellness, *Who We Are*, https://www.healthtrax.com/about-us/who-we-are (last visited June 3, 2026).

23. As a condition of receiving services, Defendant requires that its employees and customers entrust it with highly sensitive Private Information.

24. In the ordinary course of receiving services from Defendant, Plaintiff and Class Members were required to provide their Private Information to Defendant.

25. Thus, due to the highly sensitive and personal nature of the information Defendant acquires and stores with respect to its customers, Defendant, upon information and belief, promises to, among other things: (i) keep Private Information private; (ii) comply with industry standards related to data security and the maintenance of Private Information; (iii) inform its employees of its legal duties relating to data security and comply with all federal and state laws protecting Private Information; (iv) only use and release Private Information for reasons that relate to the services it provides; and (v) provide adequate notice to customers and employees if their Private Information is disclosed without authorization.

26. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

27. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Private Information, which Defendant ultimately failed to do.

## B. THE DATA BREACH AND DEFENDANT'S INADEQUATE NOTICE TO PLAINTIFF AND CLASS MEMBERS.

28. Despite Defendant's obligation to keep Plaintiff's and Class Member's Private Information secure, upon information and belief, Defendant experienced a Data Breach in or

around May 2026.[6] Indeed, various online sources have reported that Defendant experienced a data breach during that time.[7]

29. According to online sources, Akira ransomware group perpetrated a Data Breach in or around May 2026, stealing highly sensitive Private Information.[8]

30. Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

31. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such Private Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

32. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

33. Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

34. Upon information and belief, Defendant has failed to publicly acknowledge the Data Breach or send individual notice of the Data Breach to the victims.

---

[6] *See,* Breachsense, *Healthtrax Fitness and Wellness Data Breach* (May 19, 2026), https://www.breachsense.com/breaches/healthtrax-fitness-and-wellness-data-breach/ (last visited June 3, 2026); DeXpose, *Akira Ransomware Strikes Healthtrax Fitness & Wellness* (May 18, 2026), https://www.dexpose.io/akira-ransomware-strikes-healthtrax-fitness-wellness/ (last visited June 3, 2026); Ransomware.live, *Victim: Healthtrax Fitness & Wellness* (May 21, 2026), https://www.ransomware.live/id/SGVhbHRodHJheCBGaXRuZXNzICYgV2VsbG5lc3NAYWtpcmE (last visited June 3, 2026); CyberNewsLive (@CyberNewsLive), *Victim: Healthtrax Fitness & Wellness – Akira* (Aug. 21, 2026), X, https://x.com/cybernewslive/status/2060422984750305344 (last visited June 3, 2026).

[7] *Id.*

[8] *Id.*

## C. DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE RISK OF A DATA BREACH.

35. Defendant was on notice that companies who collect and retain Private Information are highly susceptible targets for data breaches such as this.

36. Indeed, it is well known that PII is an invaluable commodity and a frequent target of hackers.

37. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years. In light of past high profile data breaches at industry-leading companies, including, for example, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or, if acting as a reasonable business, should have known that the PII it collected and maintained would be vulnerable to and targeted by cybercriminals.

38. In 2024, 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[9]

39. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller

---

[9] *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter. org/publication/2024-data-breach-report/.

municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[10]

40. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public, including Defendant.

41. Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

42. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

43. Considering the information readily available and accessible before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated, and published as the result of a cyberattack. Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

---

[10] Ben Kochman, *FBI*, *Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

**D. DEFENDANT FAILED TO COMPLY WITH FTC GUIDELINES.**

44. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

45. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[11] The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

46. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for

---

[11] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

47. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

48. Such FTC enforcement actions include those against businesses that fail to adequately protect customer data, like Defendant here. *See, e.g.*, *In the Matter of LabMD, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

49. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to use reasonable measures to protect Private Information they collect and maintain from consumers. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

50. The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The

larger the data set, the greater potential for analysis and profit."[12]

51. As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

52. Defendant was at all times fully aware of its obligation to protect the Private Information of its clients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**E. DEFENDANT FAILED TO COMPLY WITH INDUSTRY STANDARDS.**

53. As noted above, experts studying cybersecurity routinely identify businesses, such as Defendant, as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

54. The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security,

---

[12] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

Incident Response Management, and Penetration Testing.[13]

55. The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

a. Control who logs on to your network and uses your computers and other devices.
b. Use security software to protect data.
c. Encrypt sensitive data, at rest and in transit.
d. Conduct regular backups of data.
e. Update security software regularly, automating those updates if possible.
f. Have formal policies for safely disposing of electronic files and old devices.
g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

56. Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that

---

[13] *The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list.

signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[14]

57. Upon information and belief, Defendant failed to implement industry standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

### F. DEFENDANT BREACHED ITS DUTY TO SAFEGUARD PLAINTIFF'S AND CLASS MEMBERS' PRIVATE INFORMATION.

58. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

59. Upon information and belief, Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain

[14] *Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations.

and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect clients' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to sufficiently train its employees regarding the proper handling of its clients' Private Information;

e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

f. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

60. Upon information and belief, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

61. Upon information and belief, had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

62. Accordingly, Plaintiff's and Class Members' lives are disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm

that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

### G. PLAINTIFF AND CLASS MEMBERS ARE AT A SIGNIFICANTLY INCREASED AND SUBSTANTIAL RISK OF FRAUD AND IDENTITY THEFT AS A RESULT OF THE DATA BREACH.

63. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[15] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

64. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

65. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more

---

[15] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (Oct. 2018), https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

66. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

67. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

68. One such example of how malicious actors may compile Private Information is through the development of "Fullz" packages.

69. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

70. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if

certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

71. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[16] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

72. Identity thieves can also use stolen personal information such as Social Security numbers and PII for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even

[16] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps.

give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

73. The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[17] After interviewing over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;
- 29-percent experienced financial losses exceeding $10,000;
- 40-percent were unable to pay bills;
- 28-percent were turned down for credit or loans;
- 37-percent became indebted;
- 87-percent experienced feelings of anxiety;
- 67-percent experienced difficulty sleeping; and
- 51-percent suffered from panic of anxiety attacks.[18]

74. Indeed, a robust cyber black market exists in which criminals openly post stolen PII on multiple underground Internet websites, commonly referred to as the dark web.

75. The ramifications of Defendant's failure to keep its clients' Private Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

76. The value Private Information PII is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

[17] *2023 Consumer Impact Report* (Jan. 2024), IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf.
[18] *Id.* at pp. 21–25.

77. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[19]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

78. Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

79. As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**H. PLAINTIFF'S AND CLASS MEMBERS' DAMAGES.**

***Plaintiff John Shell's Experience***

80. Plaintiff is a client of Defendant. As such, Plaintiff was required to provide his Private Information to Defendant.

81. Upon information and belief, Plaintiff's Private Information was impacted during the Data Breach.

82. Plaintiff discovered the Data Breach through his own research.

---

[19] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf.

83. Plaintiff would not have provided his Private Information to Defendant had Defendant disclosed that its systems lacked adequate data security to safeguard his Private Information from unauthorized access and theft.

84. Upon information and belief, Plaintiff suffered actual injury in the form of having his Private Information compromised and/or stolen as a result of the Data Breach.

85. Upon information and belief, Plaintiff has suffered actual injury in the form of damages to and diminution in the value of his Private Information—a form of intangible property that Plaintiff entrusted to Defendant and which, upon information and belief, was compromised in, and as a result of, the Data Breach.

86. Upon information and belief, Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

87. Plaintiff has a continuing interest in ensuring that his Private Information, which upon information and belief, remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, as Defendant's systems have already been shown to be susceptible to compromise and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect Private Information.

88. As a result of the Data Breach, Plaintiff has already made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: (i) researching the Data Breach; (ii) reviewing financial accounts for any indications of actual or attempted identity theft or fraud; and/or (iii) researching credit monitoring services. In total, Plaintiff estimates he has spent

several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

89. As a result of the Data Breach, Plaintiff has suffered anxiety as a result of the release of his Private Information, which he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his Private Information for purposes of committing cyber and other crimes against his including, but not limited to, fraud and identity theft. Plaintiff is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on his life.

90. Upon information and belief, Plaintiff also suffered actual injury from having his Private Information compromised as a result of the Data Breach in the form of: (i) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from Plaintiff; (ii) violation of his privacy rights; and (iii) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud he now faces.

91. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

***Damages Applicable to the Class***

92. Upon information and belief, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

93. Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive Defendant's services.

94. Upon information and belief, Plaintiff's and Class Members' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which resulted from Defendant's inadequate data security practices.

95. Upon information and belief, as a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have already been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

96. Further, and as set forth above, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members who are aware of the Data Breach have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives and monitor their credit reports for unauthorized activity for years to come.

97. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

98. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

99. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

100. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price paid to Defendant was intended to be used by Defendant to fund adequate security of Defendant's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

101. Upon information and belief, Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[20] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[21]

102. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

---

[20] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD, https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/.

[21] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

103. Finally, Plaintiff and Class Members have already suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

104. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal information of its clients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

105. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V. CLASS ACTION ALLEGATIONS

106. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to the Federal Rule of Civil Procedure 23.

107. Specifically, Plaintiff proposes the following Class (also referred to herein as the "Class"), subject to amendment as appropriate:

> **Class**
>
> All individuals whose Private Information was accessed and/or acquired as a result of the Data Breach.

108. Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

109. Plaintiff reserves the right to modify or amend the definitions of the proposed Class, as well as add subclasses, before the Court determines whether certification is appropriate.

110. The proposed Class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the Class, Plaintiff's claims are typical of the claims of the Class, Plaintiff will fairly and adequately protect the interests of the Class, common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

111. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of thousands of individuals whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, self-identification, clientele lists, and other means.

112. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. When Defendant learned of the Data Breach;

c. Whether Defendant's response to the Data Breach was adequate;

d. Whether Defendant unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

i. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

j. Whether hackers obtained Class Members' Private Information via the Data Breach;

k. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

o. Whether Defendant's conduct was negligent;

p. Whether Defendant's conduct was *per se* negligent;

q. Whether Defendant was unjustly enriched;

r. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

s. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

113. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

114. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

115. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

116. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would, therefore, have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, while still protecting the rights of each Class Member.

117. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI. CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

118. Plaintiff restates and realleges paragraphs 1–117 as if fully set forth herein.

119. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

120. Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

121. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

122. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

123. Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

124. Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect clients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

125. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

126. Defendant's duty also arose because Defendant was bound by industry standards to protect its clients' confidential Private Information.

127. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

128. Upon information and belief, Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

129. Upon information and belief, Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

130. Upon information and belief, Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide a prompt notice of the Data Breach to the persons whose Private Information was compromised.

131. Upon information and belief, Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with the FTCA;

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

132. Upon information and belief, Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

133. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions.

Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

134. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

135. Defendant further breached its duties by failing to provide a reasonable and timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

136. Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

137. Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

138. As a direct and proximate result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members have suffered damages as alleged herein and are in danger of imminent harm in that their Private Information, which upon information and belief, is still in the possession of third parties, will be used for fraudulent purposes. Such damages include but are not limited to monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

139. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable given that Defendant holds vast amounts of Private Information. It was inevitable that

unauthorized individuals would attempt to access Defendant's databases—whether through malware or otherwise.

140. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff and Class Members' Private Information by disclosing and providing access to Private Information to third parties and by failing to properly supervise both the way the Private Information was stored, used and exchanged, and those in its employ who were responsible for making that happen.

141. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

142. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

143. Plaintiff restates and realleges paragraphs 1–117 as if fully set forth herein.

144. Pursuant to Section 5 of the FTCA, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

145. Upon information and belief, Defendant breached its duties to Plaintiff and Class Members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

146. Specifically, Defendant breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

147. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Defendant's duty in this regard.

148. Upon information and belief, Defendant also violated the FTCA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

149. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendant's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

150. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

151. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

152. Plaintiff and Class Members are within the class of persons that the FTCA is intended to protect and Defendant's failure to comply with both constitutes negligence *per se*.

153. Upon information and belief, Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to Defendant's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

154. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the actual misuse of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

155. Upon information and belief, as a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

156. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

157. Plaintiff restates and realleges paragraphs 1–117 as if fully set forth herein.

158. Defendant provided services to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for services

and/or entrusting their valuable Private Information to Defendant in exchange for services. In turn, Defendant agreed it would not disclose the PII it collected to unauthorized persons.

159. Through Defendant's sale of services to Plaintiff and Class Members, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with its policies, practices, and applicable law.

160. As consideration, Plaintiff and Class Members paid money to Defendant for services and/or turned over valuable Private Information to Defendant for the purposes of receiving services. Accordingly, Plaintiff and Class Members bargained with Defendant to securely maintain and store their Private Information.

161. Defendant accepted payment and/or possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

162. In paying Defendant and/or providing their valuable Private Information to Defendant in exchange for Defendant's services, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard the Private Information as part of those services.

163. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to: (i) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (ii) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (iii) restricting access to qualified and trained employees and/or agents; (iv) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (v) applying or requiring proper encryption; (vi) implementing multifactor authentication for access; (vii) complying with federal standards to make sure that Plaintiff's and

Class Members' PII would remain protected; and (viii) taking other steps to protect against foreseeable data breaches.

164. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

165. Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Defendant.

166. Defendant recognized (or should have recognized) that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

167. Upon information and belief, Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information.

168. Upon information and belief, Defendant further breached the implied contracts with Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

169. A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide payment and/or accurate and complete Private Information to Defendant in exchange for Defendant's agreement to, *inter alia*, provide services that included protection of their highly sensitive Private Information.

170. Upon information and belief, Plaintiff and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT IV**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

171. Plaintiff restates and realleges paragraphs 1–117 as if fully set forth herein.

172. This Count is plead in the alternative to Plaintiff's Breach of Implied Contract Claim.

173. Plaintiff and Class Members conferred a benefit on Defendant by turning over their Private Information to Defendant for the purposes of services. This agreement should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members reasonably expected a reasonable level of data security. Plaintiff and Class Members did not receive such protection.

174. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it or earned by Plaintiff and Class Members.

175. As such, a portion of the payments made or earned by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

176. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

177. Upon information and belief, Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the

payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

178. If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

179. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of its wrongful conduct.

180. Upon information and belief, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

181. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

182. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class described above, seek the following relief:

a. An order certifying this action as a Class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: June 4, 2026

Respectfully submitted,

*/s/ Oren Faircloth*
Oren Faircloth (Bar No. ct30530)
**SIRI & GLIMSTAD LLP**
100 Pearl Street
14th Floor - #16946876
Hartford, CT 06103
Tel: (929) 677-5181
ofaircloth@sirillp.com

Philip J. Krzeski*
Evan D. Robert*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S. Unit 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
pkrzeski@chestnutcambronne.com
erobert@chestnutcambronne.com

Tyler Bean*
Neil Williams*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
tbean@sirillp.com
nwilliams@sirillp.com

***Attorneys for Plaintiff and the Putative Class***

**Pro hac vice application forthcoming*